### George L. Marion v. Courier Publishing Company.

#### Gen. No. 4,603.

1. LIBEL—*when words are actionable without proof of special damage.* A charge against a physician of unprofessional conduct in the treatment of a case is actionable without proof of special damage.

2. LIBEL—*effect of general statements of damage at conclusion of declaration.* A general statement of damage made at the conclusion of a declaration applies to each of the several counts thereof.

Action for libel. Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1905. Reversed and remanded. Opinion filed March 10, 1906.

CHARLES B. HAZLEHURST, for appellant.

BOTSFORD, WAYNE & BOTSFORD, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

In an action for libel brought by George L. Marion against the Courier Publishing Company, plaintiff filed a second amended declaration, which will hereinafter be called the

declaration, defendant demurred thereto, the demurrer was sustained, plaintiff stood by the declaration, defendant had judgment for costs, and plaintiff appeals.

The declaration alleged that plaintiff was a resident of the city of Elgin, a lawfully licensed and practising physician and surgeon, of much practice, in good standing, and deservedly held of good ability, skill, credit, reputation and standing in his profession, by his neighbors and by those with whom he had dealings as such physician and surgeon; that defendant was editor and proprietor of a newspaper called the Elgin Daily Courier, printed and published daily by defendant in said city; that on and for many days before February 5, 1904, plaintiff as such physician and surgeon had been carefully and properly treating and caring for Eugene Dwyer for an injury sustained by him; that defendant, knowing the premises and maliciously intending to injure and destroy plaintiff's good name, reputation, credit, business and professional practice, and to cause him to become a physician and surgeon of no good name, reputation, occupation, and practice, did, on February 5, 1904, compose and publish in said newspaper certain false, scandalous, malicious, defamatory and libelous matters of and concerning the plaintiff, and his said business, practice and occupation. The article is then set out with innuendoes. The purport of the article is that plaintiff and other physicians were treating a boy named Eugene Dwyer in a hospital for a serious injury to his leg; that it was agreed by the physicians that the boy's leg must be encased in a wooden cast of a special make; that plaintiff was the only physician in that town who owned such a cast; that he permitted its use and it was applied to Dwyer's leg; that Thomas Dwyer, father of the patient, and plaintiff got into an altercation as to whether Dr. Pelton or Dr. Brown was the family physician; that Thomas Dwyer discharged plaintiff on the spot; that after the other physicians had left the hospital plaintiff called and requested the nurses to string the patient on a harness while plaintiff removed the cast; that the nurses refused to permit plaintiff to take off the cast, but that they

took it off and delivered it to plaintiff; that if the patient
had died that night, plaintiff would have been compelled to
face a serious charge; that another cast was made to order
and at noon next day another physician had encased the in-
jured leg; that despite the treatment the boy had received
he managed to pull through, and his parents believe he will
recover; that since the accident Thomas Dwyer and plaintiff
have had hot words as to who would administer treatment;
that plaintiff was present when the boy was injured and ac-
companied him to the hospital; that plaintiff insisted on car-
ing for him; that it is customary among the profession to
permit the physician first on the ground to care for the
patient till those in authority are consulted; and if a family
physician is named it is the duty of the first physician to
withdraw unless retained, and then to work in connection
with the family physician. Most of the innuendoes are war-
ranted by the language used. The innuendoes in the second
and third counts that defendant intended to charge that
plaintiff was a physician and surgeon of no ability, capacity,
and skill, and did not know enough and was not competent
to remove said cast, and therefore was not permitted to re-
move it, we think were not warranted by the words. Pos-
sibly one or two other innuendoes are subject to the same
criticism.

But the article means that plaintiff became angry and re-
quired the removal of his cast from the boy's leg; that it was
not proper and skillful treatment of the patient to remove
the cast at that time, but on the contrary that it was perilous
to the patient and might have caused his death, and if the
patient had died that night, plaintiff would have been com-
pelled to answer a serious charge. The apparent meaning is
that plaintiff would have been compelled to answer the
charge of causing the boy's death. The article plainly
charges plaintiff with unprofessional conduct in his treat-
ment of the case. Where such a charge is made against a
professional or business man, about his conduct of his pro-
fession or business, the words are actionable without allega-
tion or proof of special damage. Nelson v. Borchenius, 52

Ill., 236; Clifford v. Cochrane, 10 Ill. App., 570; McDonald v. Lord, 27 Ill. App., 111; Gerald v. Inter Ocean Publishing Co., 90 Ill. App., 205.   At the close of the declaration it is charged that by means of the committing of such grievances by defendant, plaintiff has been injured in his good name, credit, reputation, business, profession, practice and occupation as such physician and surgeon, and brought into public scandal and disgrace, and has been shunned and avoided by divers persons, etc.   The precedents authorize such a statement of general damage at the end of all the counts, applicable to each. 2 Chitty on Pleading, 625 to 631. The article and the innuendoes properly framed state a cause of action.   Defendant's argument is to some extent based upon the supposed truth of part of the article; but the declaration charges that the article is false, and the demurrer admits that allegation.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*