397 P.2d 303

**William R. ROCKAFELLOW, Plaintiff-Appellant,**

**v.**

**NEW MEXICO STATE TRIBUNE CO., Dan Burrows and Moises Sandoval, Defendants-Appellees.**

**No. 7510.**

.Supreme Court of New Mexico.

Nov. 2, 1964.

Rehearing Denied Dec. 30, 1964.

James L. Brandenburg, Hansen & Snead, Albuquerque, for appellant.

Keleher & McLeod, William B. Keleher, John B. Tittmann, Albuquerque, for appellees.

CHAVEZ, Justice.

William R. Rockafellow, plaintiff below, appeals from a judgment notwithstanding a verdict for appellees on the eighth cause of action.

In the eighth cause of action, appellant alleged that on May 14, 1962, defendant New Mexico State Tribune Company published a false, malicious and defamatory article which purported to be a report of the jury trial on embezzlement charges against appellant and was written under the following headline: "ROCKAFELLOW SAYS HE HELD $225 EIGHT MONTHS. CARRIED MONEY IN WALLET OUT OF LOYALTY TO CITY," and that the article contained the following words: "Former City Purchasing Agent William R. Rockafellow Monday testified he carried $225. in City funds around for eight months in his wallet out of loyalty to the City." Appellant further alleged that he gave no such testimony at his trial; that this false and malicious statement was intended to and did degrade and ridicule him; made his defense in his jury trial appear ludicrous and ridiculous to the public; and made his acquittal of the charge of embezzlement appear unwarranted.

Appellees answered admitting the publication of the article set out above, but denied that the same was false, defamatory or published maliciously, and denied all other allegations. As an affirmative defense, appellees alleged that the article was a fair and accurate report of a judicial proceeding and, as such, was conditionally privileged, was not published with malice, and that the statements contained therein are true.

During the trial, the case as to Moises Sandoval was dismissed and he is not a party to this appeal.

At the conclusion of appellant's case and of the entire case, appellees moved for a directed verdict as to the eighth cause of action on several grounds. The motions were denied.

The jury rendered a verdict in favor of the two remaining defendants as to counts one through seven, inclusive. As to the eighth cause of action, the jury returned a verdict for appellant in the sum of $2,000

compensatory damages and $5,000 punitive damages.

Appellees then filed a motion for judgment notwithstanding the verdict on the ground that the article alleged was not libelous per se, but only libelous per quod, and that no recovery can be had for libel per quod unless plaintiff pleads and proves special damages caused by such publication, and the jury by its verdict having found no special damages, defendants cannot be liable.

Appellant filed a motion for new trial in causes of action one through seven. The trial court denied said motion and, as to the eighth cause of action, entered a judgment notwithstanding the verdict in favor of appellees, New Mexico State Tribune Co. and Dan Burrows. This appeal followed.

Appellant was employed by the city of Albuquerque as purchasing agent in July 1960 and the transactions occurred during the period that appellant was so employed. One of the transactions reported was the sale of surplus equipment by appellant to Donald Mackey. On November 27, 1961, appellant was discharged by the city "for grossly irregular procedures in handling of city transactions," and on the same day a criminal complaint was filed accusing appellant of embezzling city funds. An investigation by the city disclosed that in March 1961 appellant sold some used city signal equipment to Donald Mackey and Mackey paid appellant by a $225 check made out in blank. Appellant filled in his name on the check, endorsed and cashed the same and placed the money in his wallet. Appellant testified that the traffic engineering department had approached him, on a discussion basis, as to how they could get a battery charger and a floor jack, and that they in turn released to him the traffic signal equipment. He further testified that he intended to use the $225 to buy the battery charger and floor jack. These purchases were never made and appellant had the money in his possession until November 1961. On November 21, 1961, one Mr. Pinsky, at appellant's request, purchased a cashier's check from The First National Bank of Denver and forwarded the check to the city under the name of Mackey. Appellant admitted that he had made a false statement to Harold Kious, finance director for the city, when he told Kious that Mackey had not paid and that he had not tried to get Mackey to pay. Appellant also admitted that he made and signed a false report which stated that he had been unable to speak to Mackey for approximately sixty days, but that he respected Mackey's difficulties and had not pressed him for a final settlement on the signal heads. Appellant also testified that it was his belief that he could help the city most by doing exactly what he did and that others in the city administration knew that he had the money. The record shows that at the

criminal trial appellant testified that, after the traffic equipment was turned over to him, he promised to do everything possible to obtain equipment which was essential to the operation of the traffic engineering department; that it was his intention at all times to save and protect the administration and that, due to newspaper criticism and the subsequent political campaign, he felt that his loyalty should be to the city. When asked if he considered that he was protecting the city by telling lies, appellant responded:

"A. Only to the extent that loyalty stands for something.

"    * * *

"Q. In other words, you see nothing wrong with this whole thing, is that what you're telling us?

"A. I do not. * * *

"    * * *

"Q. And you as Purchasing Agent knew you could not go out and buy battery chargers just with cash without getting some kind of bids on them?

"A. When you're dealing with cash you can do that without bids, but in this case I was getting quotations and prices because it has always been my prime motive to accomplish the best possible job that I could for the City of Albuquerque."

Appellant admitted that in March 1961 he received $225 for city equipment, which he sold to Mackey, and that he carried the money in his wallet until November 1, 1961, a period of approximately eight months.

Appellant was tried in the district court of Bernalillo County on May 14, 1962, on the embezzlement charge and was acquitted. The transcript of the testimony in the criminal case was received in evidence.

Robert H. Lawrence, a reporter for the Alburquerque Tribune, attended part of the criminal trial and wrote the lead portion of the article describing the trial. He testified that "in essence" the testimony given by appellant at the criminal trial was that the money was carried by appellant for eight months out of loyalty to the city. Lawrence had known appellant since 1957, at which time Lawrence was with the United Press and appellant was with the state purchasing office. They were friends and Lawrence testified that he had no ill will or malice toward appellant and tried to report the trial fairly.

Appellant raises two points on appeal: (1) That the trial court erred in holding plaintiff's eighth cause of action was not libelous per se; and (2) that the trial court erred in granting judgment notwithstanding the verdict for the defendants for failure of the jury to find special damages, because defendants did not submit a proper instruction.

Appellant's first contention is that the article is libelous per se and that, if this contention is correct, it was not necessary for appellant to plead and prove special damages.

The trial court gave the following instruction:

"26. You are instructed that none of the publications complained of by the plaintiff in his eight causes of action are libelous per se and therefore there is no presumption that any of said publications are false or that any of said publications were made maliciously. Therefore, in order to return a verdict for the plaintiff on any or all of his eight causes of action, you must be satisfied by a preponderance of the evidence that the articles in question, or any of them, were in fact false and were published out of malice in fact, entertained by the defendants or either of them toward the plaintiff."

Appellant objected only to that part of the above instruction which stated that the article complained of was not libelous per se. Appellant argues that the article held him up to public scorn and ridicule and that he gave no such testimony.

It is the law in this jurisdiction that the term "libel per se" is applied to words which are actionable, because they are opprobrious in and of themselves without anything more. Stewart v. Ging, 64 N.M. 270, 327 P.2d 333; Del Rico Co. v. New Mexican, Inc., 56 N.M. 538, 246 P.2d 206; Chase v. New Mexico Pub. Co., 53 N.M. 145, 203 P.2d 594. In the Chase case we held:

" 'In determining whether the article is libelous per se, the article alone must be construed, stripped of all insinuations, innuendo, colloquium, and explanatory circumstances. The article must be defamatory on its face "within the four corners thereof." ' "

In Del Rico Co. v. New Mexican, Inc., supra, we said:

" * * * A cardinal test in passing upon the per se character of a claimed slander or libel is to reject the innuendo. If the words need the aid of an innuendo, they are not per se libelous and the fact that the pleader supplies one furnishes rather persuasive proof of a belief on his part that the statements relied on need it. * * *

"Furthermore, the statements claimed to be libelous, if such per se, must carry but a single meaning, and it an opprobrious or defamatory one. The language said to be libelous should be given its plain and natural meaning and be viewed by the court as other people reading it would ordinarily understand

and give it meaning. * * * They are to be·construed as a stranger might view them without the aid of any such knowledge as that possessed by the parties mentioned. And finally, if the words are not libelous per se, special damages must be both alleged and proved to support a recovery."

▮▮ The words complained of in the article, as we read them and given their ordinary meaning in the light of appellant's testimony, state a fact. It is true that the latter part of the article states that appellant carried $225 in city funds around for eight months in his wallet out of loyalty to the city. However, the words complained of in the article, read in context, are not defamatory. The article is a summary of the position appellant took in defense of the charge of embezzlement. The statements, that he acted out of loyalty to the city and that he could help the city most by doing what he did, characterize his explanation for his actions in connection with the Mackey transaction. Innuendo is required in order to give the words an opprobrious meaning. The article is a fair report of appellant's criminal trial and, as such, privileged. Henderson v. Dreyfus, 26 N.M. 541, 191 P. 442; Hubbard v. Journal Publishing Company, 69 N.M. 473, 368 P.2d 147.

We hold that the article complained of in the eighth cause of action does not contain language which is libelous per se.

▮▮

Appellant's point II reads:

"II. The Court erred in ₊granting judgment N.O.V. for the defendants for failure of the jury to find special damages because the defendants did not submit a proper instruction."

Appellant concedes that, if the language complained of in the eighth cause of action is not libelous per se, the general rule in New Mexico requires that special damages be pleaded and proved before appellant can recover. He argues that the above stated rule is not applicable in this case because the jury was not instructed upon this phase of the law, nor did appellees offer an instruction that special damages must be found before a verdict could be rendered for appellant.

▮ Appellant cites authorities to the effect that if the instructions given by the court are insufficient, there is no error unless a sufficient instruction was requested by the party complaining. King v. Tabor, 15 N.M. 488, 110 P. 601. The above rule, however, is not applicable to appellees in this case as appellees are not complaining of any instruction nor lack of instruction. The jury was instructed on the issue of special damages and on the issue of general compensatory damages. The jury found that there were no special damages and this specific finding controls the general verdict. Section 21-1-1(49), N.M.S.A., 1953 Comp.

Appellant appears to argue that the jury should have been instructed that they could not award general damages unless they found special damages. Even if this be true, a question which we do not decide, appellant cannot now complain as he did not tender or request an instruction on this point.

We hold that the trial court properly entered the judgment notwithstanding the verdict and that the judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.